# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELIDA LOPEZ, | ) | 1:06cv0153 DLB |
| | ) | |
| Plaintiff, | ) ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

## BACKGROUND

Plaintiff Elida Lopez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

The procedural history of this case is somewhat complex. Plaintiff filed her initial applications for supplemental security income and disability insurance benefits on June 4, 1996,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 9, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

alleging disability since September 1995, due to arthritis, back pain, migraine headaches, pain and weakness in her hands and anxiety. AR 65-67. After the claims were denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 52-62, 63. On March 26, 1998, ALJ Lana Parke held a hearing. AR 32-49. She denied Plaintiff's claims and the Appeals Council denied her request for review. AR 7-9, 12-20.

While Plaintiff's Appeals Council review was pending, she applied again for benefits in February 2000. AR 240.

Plaintiff sought judicial review of her initial applications and in January 2001, the parties stipulated to remand. AR 291, 325-325.

On remand, ALJ James Berry held a hearing on March 5, 2002. AR 263-290. He consolidated the new claims with the 1996 claims. On May 24, 2002, ALJ Berry determined that Plaintiff was disabled since December 2, 2000, and that she was eligible for supplemental security income but not disability insurance benefits because her disability did not begin on or before September 30, 1998. AR 237-246. The Appeals Council denied review and Plaintiff sought judicial review. AR 216-227.

The case was remanded for further proceedings and the Appeals Council instructed the ALJ not to disturb the favorable portion of the May 2002 decision. AR 673-676. ALJ Berry held a hearing on July 20, 2005, and advised Plaintiff's attorney that the issue was whether Plaintiff was disabled prior to September 30, 1998. AR 778-793.

On August 30, 2005, ALJ Berry determined that Plaintiff was not disabled during the period March 20, 1996, her alleged onset date of disability, through September 30, 1998, her date last insured, and was therefore not entitled to Title II disability benefits. AR 377-395. On December 12, 2005, the Appeals Council denied review. AR 368-370.

Hearing Testimony

*March 1998 Hearing*

ALJ Parke held a hearing on March 26, 1998, in Fresno, California. Plaintiff appeared with her attorney, Robert Christenson. AR 32.

1   Plaintiff testified that she was 59 years old at the time of the hearing and completed the
2 fifth or sixth grade.  AR 38.  She lives with her husband, her daughter, and her two
3 grandchildren, ages seven and twelve.  AR 42-43.
4   Plaintiff last worked two years ago as an in-home care provider.  AR 35.  She testified
5 that she stopped working because she couldn't stand the pain and she was unable lift her patients,
6 take care of them, and do their chores.  AR 37.
7   Plaintiff explained that she was unable to work because she has arthritis in her spine,
8 back, arms and knees.  She described her pain as "like getting stabs on [her] back" when she uses
9 her arms, and testified that she sometimes has to use a cane.  AR 37.  She estimated that she uses
10 the cane four to five days a week, depending on how her knees are.  AR 48.  She also has pain in
11 her shoulders and neck.  The pain in her neck causes migraines and she has to see the doctor for
12 injections.  AR 45.
13   Plaintiff testified that she could do little things around the house, but could not walk or sit
14 too long.  When asked how much she thought she could lift, she explained that she has trouble
15 with a nerve in her finger that causes her right hand to draw up.  AR 38-39.  Her right hand is her
16 dominant hand.  She has trouble grasping and holding onto things, and if she lifts for too long,
17 her right hand draws up and is painful.  AR 39.  She did not think she could lift a gallon of milk
18 repetitively because of her hand.  She thought she could stand for half an hour to an hour, and
19 could sit for about an hour.  AR 40-41.  If she sits for longer, she has to lay down or walk a little.
20 Plaintiff thought she could walk about half a block before her back "kills" her.  AR 41.
21   Plaintiff testified that her medications make her sleepy and she sometimes has to go back
22 to bed.  AR 41.  She naps in the afternoon for about 30 minutes to an hour after she takes her
23 medication, and again in the evening.  AR 42.
24   Plaintiff's daughter helps her with chores, although Plaintiff microwaves food for her
25 husband and grandchildren.  AR 43.  Plaintiff did not think she could do her prior work because
26 "it's too much work," and because of her arthritis.  AR 44.
27   Plaintiff gets up about 5:30 in the morning and fixes her husband a sandwich, and then
28 goes back to bed until 6:30, when she gets the kids ready for school.  She takes her medication

and then takes a nap, after which she picks up the house a little and sometimes has lunch. She takes her medication again and takes another nap, then watches television while she waits for the kids to come home. She makes the children a snack if they're hungry, then has dinner and goes to bed around 8:30 at night. AR 46-48.

*March 2002 Hearing*

On March 5, 2002, ALJ Berry held a hearing pursuant to the order of remand in Fresno, California. Plaintiff appeared with her attorney, Robert Christenson. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 263.

Plaintiff was 63 years old at the time of the hearing. Prior to providing in-home care, Plaintiff worked at the Royalty Carpet factory working machines that made yarn bundles. AR 270. She also worked in the field, picking and packing grapes. AR 271. She testified that she could no longer work because her bones were worn out and she has pain in her hip and left leg. AR 271-272. She uses a cane to walk, and while she can walk without it, it hurts more to do so. AR 272. She testified that medication helps a little and does not cause any side effects. AR 273.

Plaintiff thought she could sit for about half an hour and could stand, while leaning on something, for about 10 minutes. AR 274. Plaintiff only walks when she goes outside her house or to the doctor, and she did not think she could walk for a block. AR 274. Plaintiff has had two carpal tunnel releases on her right hand, but still can't carry many things with it. AR 275. She also broke her right wrist prior to 1995, while working with the elderly. AR 275. Her right hand draws up about once a week, but the more she uses it, the more it draws up. AR 277. She can hold a gallon of milk, but couldn't do so for a third of an eight hour day. AR 278, 284. When her daughter passed away and her grandchildren moved in with her, about five years ago, she was able to care for them and cook for them. AR 285.

Plaintiff gets migraines about once a month, but takes medicine at night and is fine the next day. AR 279-280. She gets depressed because she can't do anything, but medication is helping. AR 280. During the day, she stays home and watches television. Her grandchildren eat at school and her husband is on a diet, so she doesn't do much for him. She drives when she

1  goes to the doctor or to the store.  AR 283-283.  The kids help her take the groceries into the
2  house and her daughter helps her with laundry.  AR 283.

3  *July 2005 Hearing*

4  On July 20, 2005, ALJ Berry held a hearing after the District Court remand in Fresno,
5  California.  Plaintiff appeared with her attorney, Robert Christenson. VE Cheryl Chandler also
6  appeared and testified.  AR  778.

7  At the beginning of the hearing, the ALJ and Mr. Christenson discussed Mr.
8  Christenson's request for follow-up interrogatories to Dr. Mason and the ALJ's determination
9  that he did not need additional information.  AR 780-784.  ALJ Berry reiterated that the issue
10 was whether Plaintiff was disabled prior to September 30, 1998.  As the parties had already been
11 through a hearing, the ALJ and Mr. Christenson agreed not to take further testimony from
12 Plaintiff.  AR 785.

13 The ALJ asked the VE to assume an individual 55, 56 years old, with Plaintiff's
14 education and past work experience.  This person has the residual functional capacity ("RFC") to
15 lift and carry 50 pounds occasionally, stand and walk or sit six hours at a time.  The VE testified
16 that this person could perform all of Plaintiff's past relevant work.  AR 788.

17 For the second hypothetical, the ALJ asked the VE to assume that this person retains the
18 RFC to lift and carry 20 pounds occasionally, 10 pounds frequently, and to stand and walk four
19 hours each.  This person can sit for six hours, but cannot repetitively push, pull, squat or crawl.
20 This person cannot vocationally bend, climb or reach, and has mild limitations or prohibitions in
21 to an exposure to heights and driving.  This person has moderate limitations in the ability to be
22 exposed to temperature extremes.  The VE testified that this person could perform Plaintiff's past
23 relevant work as a machine operator, assuming that the limitation in standing and walking was a
24 combination of standing and walking.  AR 788-789.

25 For the third hypothetical, the ALJ asked the VE to assume that this person retains the
26 RFC to stand and walk six hours total, and to sit for eight hours.  This person can lift and carry
27 20 pounds occasionally, 10 pounds frequently, but is limited to occasional use of the right upper
28 dominant extremity for grasping, pushing, pulling and fine manipulation.  This person cannot

crawl, but can occasionally bend, squat, climb, reach above, stoop, and crouch. This person must avoid exposure to unprotected heights and moving machinery, but can be occasionally exposed to temperature extremes and pulmonary irritants. The VE testified that this person could not perform Plaintiff's past work. AR 789.

Plaintiff's attorney asked the VE to assume that this person had a limited or light RFC, with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. This person's right dominant hand is limited to occasional simple grasping, pushing and pulling, and fine manipulation. The VE testified that this person could not perform any of Plaintiff's past relevant work, or any other work in the national economy. AR 790.

Mr. Christenson then referred to the ALJ's second hypothetical, and asked the VE to assume that the standing and walking were four hours in combination, with the rest of the hypothetical remaining the same. This person could not perform Plaintiff' past work. This person could also perform a restricted amount of sedentary work with a sit/stand option. AR 791.

Medical Record

March 1995 knee x-rays revealed mild symmetrical degenerative changes in the medial joint compartment of both knees, within the range of normal for age. AR 168.

Plaintiff began seeing John Booker, M.D., in May 1996. She complained of pain in her shoulders and knees, and swelling in her legs. She was prescribed Ibuprofen and advised to return as needed. AR 120. In late May, Plaintiff complained of right shoulder pain and numbness down her right arm. AR 119. She was prescribed Vicodin. AR 119.

Plaintiff underwent cervical x-rays on May 30, 1996. The x-rays showed mild anterior subluxation of C4 with respect to C5, mild narrowing of C5-6 and C6-7 interior spaces with moderate spurring, and partial encroachment upon the intervertebral foramina at the C3-4 and C4-5 interspaces on the left and at the C5-6 interspace on the right due to spurring. AR 167.

On July 25, 1996, Plaintiff saw James E. Lessenger, M.D., for a consultive examination. Her chief complaint was arthritis in her shoulders, neck and knees, and she indicated that her medicine helped. On examination, Plaintiff's grip strength was normal and range of motion in

her back and all extremities was normal. Bent and straight leg raising did not produce any pain. Dr. Lessenger diagnosed generalized osteoarthritis with no evidence of impairment, hypertension in good control, and chest pain suggestive of esophagitis. He imposed no physical limitations and opined that her prognosis was excellent. AR 113-116.

In August 1996, a State Agency physician opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight hour day, and sit about six hours in an eight hour day. AR 104-111. This opinion was affirmed on January 13, 1997. AR 111.

On March 6, 1997, Plaintiff complained of pain in her right hand/forearm but stated that Volatren helped. Her hand was not swollen, and Tinel's and Phalen's signs were negative. The motion in her ring finger was limited. She also complained of low back pain with radiation to her legs. Dr. Booker gave her a back care book and changed her medication to Naprosyn. AR 148. An x-ray of her right hand revealed diffuse degenerative joint disease consistent with age, with slightly greater bony overgrowth about the ulnar side of the third MP joint. AR 166.

On March 14, 1997, Dr. Booker completed a Medical Source Statement Form. He opined that Plaintiff could occasionally lift 20 pounds, 10 pounds frequently, and could stand and/or walk for six hours. She had no restrictions in sitting. He explained that Plaintiff's obesity and degenerative changes on a 1991 lumbar spine x-ray supported these limitations. He further opined that Plaintiff was limited in using her right hand for simple grasping, pushing and pulling and fine manipulation based on her prior carpal tunnel surgery, limited mobility and pain with use. Because of her obesity and poor mobility, she could never crawl, and could occasionally bend, squat, climb, reach above, stoop, crouch or kneel. She could not tolerate exposure to unprotected heights, and could occasionally tolerate exposure to marked temperature changes, dust, fumes or gases. He described her pain as moderate, meaning that it could be tolerated but would cause a marked handicap in the performance of an activity precipitating the pain. Plaintiff's objective sign of pain was "limited mobility." She also had degenerative changes in her knees. AR 142-145.

In August 1997, Plaintiff complained of knee pain and was prescribed pain medication, an anti-inflammatory and an anti-depressant. AR 176-181.

In September 1997, O. Hernandez, M.D., completed a Medical Source Statement form and opined that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, could stand and/or walk for two to four hours, and could sit for less than six hours. She could not use her right hand for simple grasping, pushing and pulling and fine manipulation due to arthritis in her hand and cervical spine findings. She could never bend, squat, crawl, climb, crouch or kneel, and could occasionally reach above and stoop. She could not tolerate exposure to unprotected heights, and could occasionally tolerate being around moving machinery. He described her pain as moderate, meaning that it could be tolerated but would cause a marked handicap in the performance of an activity precipitating the pain. Plaintiff's objective signs of pain were x-rays and joint deformity. AR 211-213.

Plaintiff had an injection in her knee in January 1998. AR 560. She continued taking Ultram and Clinoril for osteoarthritis. AR 555, 559, 560.

On July 23, 1998, Frederick R. Young, M.D., performed a consultive orthopedic examination. There were no spasms or tenderness in her neck, but there was tenderness in both shoulders. Sensation was intact in both her upper and lower extremities. Dr. Young opined that Plaintiff may have mild degenerative arthritis, but had no significant medical disability. AR 185-187.

In October 1998, Plaintiff was prescribed another anti-inflammatory medication. AR 547.

On March 10, 2005, Alanson A. Mason, M.D., responded to interrogatories from the ALJ. Dr. Mason did not examine Plaintiff but reviewed her medical records. Based on his review, he opined that Plaintiff could sit for four hours at a time, and stand and walk for two hours at a time each. During an eight hour day, she could sit for a total of six hours and stand and/or walk for four hours each. She could frequently lift and carry 6-10 pounds, up to 20 pounds occasionally. She could not use her hands for pushing and pulling of arm controls, but could use them for simple grasping and fine manipulation. She could not squat or crawl, and

could occasionally bend, climb and reach. She had mild restrictions in activities involving unprotected heights and moderate restrictions in activities involving exposure to marked changes in temperature and humidity. AR 769-774.

In July 2005, Dr. Booker summarized Plaintiff's condition and treatment from March 1994 through March 1997. He explained that shortly after Plaintiff's last office visit, she asked him to fill out a medical source statement. He stated that he still agrees with his findings at that time and felt that she was disabled at the time the form was filled out. She had difficulty with her right hand at that time. AR 777. He could not comment on her present condition because he had not seen her since 1997. AR 775-776.

<u>ALJ's Findings</u>

ALJ Berry determined that Plaintiff had the severe impairments of degenerative disc disease, hypertension and obesity. After reviewing the medical evidence, he found that she retained the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 4 hours each and sit for 6 hours. She could not repetitively push, pull, squat or crawl, but could occasionally bend, climb and reach. She also had mild prohibitions on exposure to heights and driving, and moderate limitations on exposure to temperature extremes. Based on the testimony of the VE, the ALJ concluded that Plaintiff could return to her past relevant work as a machine operator prior to September 30, 1998. AR 393-394.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)) (degenerative disc disease, hypertension and obesity); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can return to her past relevant work as a machine operator. AR 393-394.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

10

In challenging the decision, Plaintiff contends that the ALJ (1) erred in failing to adopt the opinions of treating physicians Dr. Booker and Dr. Hernandez; and (2) erred in failing to send clarification interrogatories to Dr. Mason, in failing to have him available at the hearing, and in failing to comply with HALLEX I-2-7-30.

## DISCUSSION

A.   Treating Physicians' Opinions

Plaintiff argues that the ALJ erred in failing to adopt the limitations set forth in Dr. Booker's March 14, 1997, Medical Source Statement and Dr. Hernandez's September 2, 1997, Medical Source Statement.  She focuses on the right hand limitations imposed by the doctors and argues that had the ALJ credited their opinions, she would not have been able to perform her past relevant work and should have been found disabled.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual.  However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).  "Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

Here, the ALJ thoroughly reviewed the medical evidence, including the Medical Source Statements submitted by Dr. Booker and Dr. Hernandez.  In giving little weight to Dr. Hernandez's restrictions, the ALJ explained that they appeared to be based mainly on Plaintiff's subjective complaints.  AR 391.  An ALJ may reject the treating physician's opinion because it

was based on the claimant's discredited subjective complaints.[4] *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).  The ALJ next noted that the objective evidence set forth on the statement was described as mild or minimal, and that Plaintiff continued to receive conservative treatment, with regular monthly prescription refills.  A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallanes*, 881 F.2d at 751; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (the need for conservative treatment suggests a lower level of pain and functional limitation).  A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes*. 881 F.2d at 751.

The ALJ rejected Dr. Booker's opinions for similar reasons.  In attempting to clarify Dr. Booker's March 1997, statement on remand, the ALJ asked Dr. Booker to provide further clarification of his opinion.[5]  The ALJ set forth both his March 1997 statement and his July 14, 2005, clarification, as well as the evidence cited by Dr. Booker in support of his opinion.  The ALJ explained that Dr. Booker's response only summarized his progress notes, which appeared to be based on Plaintiff's subjective complaints.  The ALJ also explained that the evidence cited in support of his limitations was described as "mild."  AR 391.

As to Dr. Booker's July 27, 2005, letter, the ALJ described it as "sketchy at best," and explained that it failed to answer the questions in his prior letter.  AR 391.  The ALJ then reviewed the abundance of objective evidence that contradicted his restrictions.  For example, Dr. Lessenger's July 1996, examination did not demonstrate any significant weakness, sensory or neurological deficits, or muscle atrophy.  AR 391.  Nor did Dr. Young's July 1998, examination reveal any neurological deficits or significant medical disability.  ALJ Berry further explained that a March 1997, right hand x-ray was normal for Plaintiff's age, with "slightly" greater bony overgrowth about the ulnar side of the third metacarpophalangeal joint.  Although Dr. Booker

---

[4] Plaintiff does not challenge the ALJ's credibility finding.

[5] In a letter dated October 19, 2004, ALJ Berry explained to Dr. Booker that under current legal standards, he could not afford much weight to "fill-in-the-blanks" or "check-the-blocks" forms unless they contained additional information such as bases for conclusions, specific limitations, onset date and expected duration, treatment history and whether the limitations are based on subjective complaints.  AR 767.

indicated that Plaintiff "had difficulty with her right hand at the time," there is no explanation other than "limited mobility of the right ring finger distal interphalangeal joint." AR 391. *Magallenes,* 881 F.2d at 751.

The ALJ next explained that he rejected Dr. Booker's opinion because he failed to provide relevant, and subsequently requested, information. AR 391, 767. Specifically, despite the ALJ's request for this information, Dr. Booker failed to provide the date his restrictions became effective, and, if Plaintiff's condition existed for less than 12 continuous months, an opinion as to whether it was expected to exist for more than 12 continuous months and at what severity level. AR 391. The ALJ explained that this was especially relevant given Dr. Lessenger's July 1996 examination, during which he found no limitations. AR 391. During this examination, which took place less than one year before Dr. Booker completed the Medical Source Statement, Plaintiff's grip strength was normal and range of motion was full with good stability in all joints. AR 391. The ALJ also noted that in July 1996, Plaintiff's chief complaints concerned her back, shoulders and knees. AR 391.

Based on the above, then, the ALJ set forth specific and legitimate reasons for rejecting the opinions of Dr. Booker in both his Medical Source Statement and subsequent clarification letter, and the opinion of Dr. Hernandez. Although Plaintiff sets forth evidence that she believes supports her doctors' opinions, it does not render the ALJ's decision incorrect. The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.*

B.   Additional Evidence from Dr. Mason

In her final argument, Plaintiff contends that the ALJ should have sent an interrogatory to Dr. Mason requesting clarification as to how long Plaintiff could stand and/or walk in combination in an eight hour day. Plaintiff also argues that Dr. Mason should have been made available live, either on the telephone or by video, during the hearing so that his opinion could be questioned. In support of her argument, Plaintiff cites HALLEX I-2-7-30, which governs "Proffer Procedures."

First and foremost, the Ninth Circuit has determined that HALLEX, a policy and guidelines manual for SSA hearing office employees, "has no legal force and is not binding." *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003) (citing *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000)). "As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." *Id.* Plaintiff's argument regarding HALLEX is not entirely clear, but in any event, HALLEX has no legal implications.

At the beginning of the hearing, the ALJ and Plaintiff's counsel discussed Plaintiff's concern about questioning Dr. Mason regarding Plaintiff's ability to stand and walk in combination. The ALJ explained that he did not find Dr. Mason's opinion that Plaintiff could walk for four hours and stand for four hours to be unclear. AR 783. Dr. Mason opined that Plaintiff could sit for a total of six hours, and indicated to Counsel that this made the stand and walk issue somewhat irrelevant. AR 783. The ALJ concluded that he didn't have "any problem with it" and that it was "plain" to him. AR 784. Counsel responded, "Oh, okay." AR 784. An ALJ's duty to develop the record arises only where the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). The ALJ did not make any such finding here.

As to Plaintiff's disagreement with Dr. Mason's finding that she could use her hands repetitively, the Court has explained above why the ALJ properly discounted the limitations set forth by Dr. Hernandez and Dr. Booker. Her argument is therefore without merit.

Nor did the ALJ err in not requiring that Dr. Mason appear at the hearing. The Court recognizes that, under certain circumstances, a claimant should be permitted to cross-examine the author of submitted evidence. For example, in *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983), the court determined that where a physician is a crucial witness whose findings substantially contradict the other medical testimony, and when interrogatories are an inadequate substitute for cross-examination, the claimant will be denied procedural due process if his request to subpoena the physician is not granted. However, the court recognized that a claimant is not entitled to unlimited cross- examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). *Id.* at 302; *see also Butera v. Apfel*,

173 F.3d 1049, 1057 (7th Cir. 1999) (observing that cross-examination is not an absolute right in administrative cases).  The ALJ has discretion to decide when cross-examination is warranted.  *Id.*

Here, while the ALJ did give controlling weight to Dr. Mason's opinion, his findings did not substantially contradict the other medical testimony.  As the ALJ explained, the two consultive physicians did not find *any* limitations in 1996 and 1998.  AR 390.  In fact, the ALJ gave Plaintiff the benefit of the doubt by imposing some limitations, in part based on Dr. Mason's opinion.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Elida Lopez.

IT IS SO ORDERED.

Dated:   **May 1, 2007**          /s/ **Dennis L. Beck**
                                                           UNITED STATES MAGISTRATE JUDGE